## PEOPLE v. EVANS.

1. BURGLARY—PROSECUTION—TRIAL—INSTRUCTIONS—SUFFICIENCY OF EVIDENCE.

    Where, in a prosecution for burglary, the evidence is undisputed that doors were unfastened and opened, the only contest being whether the acts were done under a claim of right, there is no error in charging that, under the evidence, there was a breaking by some one, where, from the remainder of the charge, it is apparent that all the court meant to have the jury understand was that the opening of doors constituted an actual breaking.

2. SAME—INTENT—BREAKING UNDER CLAIM OF RIGHT.

    One who has charge of buildings and personal property on a farm in the absence of the owner and the right to enter the buildings does not commit burglary in entering them, nor does one who assists him in removing property commit either burglary or larceny in so doing under a reasonable bona fide belief of such right.

3. CRIMINAL LAW—EVIDENCE—CONTENTS OF LETTER—ADMISSIBILITY.

    There is 'no error in refusing to permit witnesses, who have turned State's evidence, to state the contents of a letter written by one of them to the prosecuting witness while in jail, there being nothing to indicate that the letter had any refer-

ence to the offense on trial, and it being counsel's duty to develop its relevancy by preliminary questions if he desires to use it as impeaching evidence.

4. BURGLARY—INTENT—BREAKING UNDER CLAIM OF RIGHT.
Where the evidence is in conflict whether the person whom respondent assisted to carry away corn and chickens from a farm was the agent of the owner and had authority to enter the premises, whence the offense of burglary could not be committed, the question was one for the jury, and the court did not err in refusing an instruction for acquittal on that ground.

Error to Berrien; Coolidge, J. Submitted November 15, 1907. (Docket No. 173.) Decided December 10, 1907.

Charles Evans was convicted of burglary and sentenced to imprisonment for not less than three nor more than five years in the State prison at Jackson. Affirmed.

*John J. Sterling*, for appellant.

*Charles E. White*, Prosecuting Attorney, for the people.

BLAIR, J. Respondent was charged with and convicted of the offense of burglary. The alleged crime was committed on the night of December 31, 1906, by breaking and entering a corncrib and chicken house upon the farm of one Morris Scofield, who was the complaining witness. The door of the corncrib was fastened with a strap hasp and staple. The door on the chicken coop was fastened by a stick braced against it on the outside. In accordance with his custom, Mr. Scofield was not living in his dwelling house on the farm at the time in question, but was living in the city of Benton Harbor, where he resided during the winter months. He went to the farm nearly every day to feed the stock and take care of it, but hired one Groves to feed and take care of the stock on Christmas Day, 1906, and New Years Day, 1907. Groves

and his wife lived in a tenant house upon this same farm, some 20 or 25 rods from Scofield's dwelling house, and had worked for Scofield by the day during the fall of 1906, but quit working for him regularly when he moved into town, about November 25th.

"After that he helped me a day or two or three, hauling in corn fodder. After he quit working he did not work for me at all except occasionally he did my chores, I think, once or twice. On New Years Day and Christmas I did not go to the farm and Groves did my chores on those two days. I hired him to do it. * * * I authorized Groves to feed the chickens and horses and cows on the farm on New Years and also Christmas but I never told him to feed them any other time, only on these two days. Groves paid no rent for the tenement house and I paid Groves money for doing the chores on Christmas and New Years. I went out to the farm every day except New Years and Christmas."

Groves pleaded guilty to the offense of burglary and testified in behalf of the people. Among other things he testified:

"I was in Scofield's employ at the time. After the fall work was done he wanted me to do chores for him and I did so. I would take care of his stock. * * * I was authorized by Mr. Scofield to supervise things in general when he was not there. I looked after the stock, horses and chickens. At that time I was his hired man and lived in the tenant house."

On the night of December 31st, respondent went to the house of Groves with a team and wagon, and he, Groves, and two other men went to the corncrib; some one of the four unfastened and opened the door, and a quantity of corn was taken and afterwards carried to Benton Harbor and disposed of. The next day respondent returned to the place and certain chickens were taken from the chicken coop.

Respondent was sworn and testified in his own behalf that he had nothing to do with the actual taking of the corn and chickens other than transporting them in his

wagon and that what he did was at the request of Groves, believing in good faith that Groves had a lawful right to take and dispose of the property; that the corn was sold by Groves, who took the money and gave respondent $2 for the use of his team and services; that the chickens were sold by respondent for $4.88, which money he gave to Groves. He also testified that Groves told him that he had charge of the premises and was Scofield's hired man.

In the course of the cross-examination of Groves the following occurred:

"I have talked with Scofield since I have been in jail about this matter. I wrote him a letter.

"*Mr. Sterling:* We serve notice to produce that letter. That was the first I knew of it. We want that letter.

"*Mr. White:* You won't get it.

"Gilbert Mitchell did the writing; I dictated it to him. I had seen Mr. Scofield before I wrote that letter. Mr. Scofield came afterward and saw me on Sunday.

"*Q.* What was in that letter?

"*Mr. White:* We object to that; no showing it is relevant and material.

"*Mr. Sterling:* It is relevant and material because it shows possibly why this man turned State's evidence to get out of the crime himself. The letter was written about the 9th or 10th of March.

"*The Court:* Objection sustained; to which ruling of the court respondent, by his counsel, excepted."

The assignments of error argued in the brief of respondent's counsel are:

1. That the court erred in charging that "under the evidence in this case, there was a breaking, that is, by some one, some of the four parties who are named."

It is contended that—

"Since breaking is the essential element of the offense, it must be left with the jury to say from the evidence whether the people have proven this essential element beyond all reasonable doubt and to a moral certainty. It is a question of fact for the jury; not a question of law for the court."

The entire paragraph, in which the expression complained of is, is as follows:

" The word ' breaking,' too, has a technical meaning in the law.    It does not necessarily mean to break a lock. Unfastening anything which has been fastened will constitute a breaking under the law.    Where anything is shown to be shut up, no matter how, or fastened, if it is opened by another person or unfastened, that constitutes a breaking within the meaning of the law, and so, under the evidence in this case, there was a breaking, that is, by some one, some of the four parties who are named."

While it is true that the breaking which constitutes an essential element of the offense of burglary must have been with a felonious intent, we think the jury must be presumed to have understood from this paragraph of the charge, taken in connection with the remainder of the charge, that all that the court meant to have them understand as having been proved in the case was that the opening of the doors, which was undisputed, was sufficient to constitute an actual breaking, and, so understood, the charge is not subject to criticism.

The contentions of the respondent were fairly submitted to the jury, and they were instructed that if Mr. Groves had the oversight and charge of the premises, and had a right to enter the corncrib and chicken coop, there was no burglary committed in the case, and, further, if they should find that respondent had good reason to believe that Groves had charge of the property, and could dispose of it as he pleased, in that event respondent would not be guilty of burglary nor larceny either.

2. That the court erred in refusing to permit respondent's counsel to have an answer to his question as to the contents of the letter written by Mitchell, one of the four who took the property, and dictated to him by Groves, and also in refusing to permit an answer to practically the same question put to Mitchell when also on the witness stand as a witness for the people.    At the time this question was asked, there was nothing to indicate to the

court that the letter in question had any reference whatever to the alleged offense for which respondent was on trial, and the ruling was therefore correct. If respondent's counsel desired to introduce this letter as an impeachment of the witness Groves, he should have developed its relevancy by preliminary questions.

3. The court erred in not instructing the jury that "Groves was the agent of Scofield, having authority to enter the premises, and therefore the offense of burglary could not be committed." It is true that the testimony of Groves fully supports this contention, but the testimony of Scofield presented an issue of fact as to the right of Groves to enter the chicken coop and corncrib on the night in question, which was properly submitted to the jury.

The judgment is affirmed.

McALVAY, C. J., and CARPENTER, GRANT, and MOORE, JJ., concurred.